IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cora Madrid,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Apache County and Melody Capps,<br><br>　　　　Defendants. | No. CV 03-0172-PCT-ECV<br><br>**ORDER** |

Pending before the court is Defendant Melody Capps' Motion for Judgment as a Matter of Law. Doc. #119. On June 20, 2006, following a trial in Prescott, Arizona, a jury found in favor of Plaintiff Cora Madrid and awarded her compensatory damages in the amount of $300,000.00. Before the case was submitted to the jury, Defendant Capps moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, which the court denied. Defendant Capps now renews her request pursuant to Rule 50(b). Plaintiff has filed a Response to Defendant's Motion for Judgment as a Matter of Law and Defendant has filed a Reply. Doc. #125, #126.

**I.　BACKGROUND**

From the evidence presented in this case, the jury could have reasonably concluded as follows:

1    Plaintiff began working for Apache County in the summer of 1984. RT[1] at 106.
2 While working for the human resources department in February 1997, Plaintiff initiated a
3 sexual harassment complaint against the human resources director. RT at 63. Plaintiff was
4 then transferred to the county assessor's office, where she worked until her termination in
5 2001. RT at 63.

6    During her 17 years with the county, Plaintiff never received any written complaints
7 about her performance as an employee. RT at 107-115. Before her termination, Plaintiff was
8 a highly-regarded county employee who had no disciplinary issues. RT at 107-115.

9    Things changed when Plaintiff was transferred to the county assessor's office. RT at
10 118. Defendant Capps, who was an appraiser in the assessor's office when Plaintiff started,
11 did not like Plaintiff. RT at 460. Plaintiff and Defendant ran against each other for Apache
12 County assessor in 2000. RT at 139. Defendant told Randy Andrews, an appraiser in the
13 assessor's office and Defendant's campaign manager, that if she was elected she would fire
14 Plaintiff. RT at 297-299. Defendant won the election and took office in January 2001. After
15 the election, Defendant asked Andrews to write a report to the county manager critical of
16 Plaintiff's treatment of members of the public. RT at 308. During his testimony, Andrews
17 described Defendant as his "very best friend" in the office for many years. Id. However,
18 Andrews refused to write the report because he had never seen Plaintiff be rude with a
19 member of the public and in his view she was one of the best in the office in that regard. RT
20 at 295, 308. Several other current and former county assessor employees testified that
21 Plaintiff was an excellent employee.

22    Defendant's chief deputy, Chris Hext, kept a daily log of Plaintiff's activities in the
23 office from October 19, 2000 to February 7, 2001. RT at 409, 414. Hext conceded that
24 nearly every day she wrote down everything Plaintiff was doing. RT at 414. The log shows
25 that Hext literally took minute by minute notes of everything Plaintiff did in what appears
26 to be an almost pathological obsession to find something to use against Plaintiff. Plaintiff's

27
28        [1] Reporter's Transcript of Proceedings.

- 2 -

1  Exhibit 19. As Plaintiff argued, given the time Hext spent watching and writing notes about
2  Plaintiff, Hext could not have had much time to do any county assessor work.

3  On February 9, 2001, Plaintiff was called up to the office of the human resources
4  director, Karen Houston, advised of a list of complaints that had been submitted by
5  Defendant Capps, and placed on administrative leave. RT at 475, 591. Neither Houston nor
6  the county manager, Delwin Wengert, ever reviewed Plaintiff's personnel file reflecting her
7  17-year history with the county before acting on Defendant Capps' complaints. RT 606, 616.
8  After the complaints were read to Plaintiff at this meeting, she was told to leave the building.
9  RT 596-597. Defendant presented no evidence of security issues or ongoing problems that
10 would require Plaintiff to leave her employment pending resolution of the allegations against
11 her. After Plaintiff had gathered her belongings and was preparing to leave, Defendant
12 accosted both Plaintiff and non-employees who were with her in the public lobby of the
13 county building and told them to leave immediately. RT at 370-371. When one of the non-
14 employees responded that they had a right to be in a public building, Defendant ran into
15 another county office saying she was going to call the police. RT at 371.

16 A reading of the transcripts of the disciplinary hearings held on February 13 and 15,
17 2001, leaves the impression that the decision was already made concerning Plaintiff's status.
18 Plaintiff's Exhibit #12, #15. Defendant was argumentative, aggressive at times, and she
19 limited Plaintiff's participation. Id. Although county policy provides for "progressive
20 discipline" prior to considering termination, the policy was not followed here. RT at 603,
21 616.

22 Defendant made good on her promise. She fired Plaintiff on February 23, 2001, a
23 mere 53 days after she took over as county assessor. RT at 489. Plaintiff's efforts to find
24 other employment in the St. Johns area were unsuccessful. RT at 188-191. Eventually,
25 Plaintiff had no other options but to move to New Mexico for employment, even though
26 doing so forced her to leave her two teenage sons with her parents. RT at 197-199.

27 After hearing the evidence, the jury found in favor of Plaintiff on her sole claim of
28 intentional interference with contractual relations. Before reaching the underlying claim, the

- 3 -

1  jury was instructed that it first must consider the threshold question of whether Defendant
2  Capps was acting in the course and scope of her employment when she fired Plaintiff.  The
3  instruction stated:

4     As Plaintiff, Cora Madrid has the burden of proof in this case.  As a
5     threshold matter, Cora Madrid must prove that Melody Capps was not acting
6     in the course and scope of her employment as assessor for Apache County
7     when Cora Madrid's employment was terminated.

8     Melody Capps was acting within the course and scope of her
9     employment as county assessor for Apache County if:

10     I.    Her actions were the kind she is authorized to perform; and
11     II.    Her actions were motivated at least in part by a purpose to serve
12         the county.

13     If you find that Melody Capps was acting within the course and scope
14     of her employment when Cora Madrid's employment was terminated, you need
15     go no further and you must find for Defendant Melody Capps and against
16     Plaintiff Cora Madrid.

17     If you find that Ms. Capps' actions were not within the course and scope
18     of her employment, you must then determine whether Melody Capps
19     improperly interfered with Cora Madrid's employment agreement with Apache
20     County.

21  The court adopted the course and scope of employment instruction submitted by Defendant
22  Capps, which, in pertinent part, mirrors the Restatement (Second) of Agency § 228(1).

23
24
25
26  **II.  LEGAL ARGUMENT AND ANALYSIS**
27      **A.  Course and Scope of Employment**
28

- 4 -

1. Defendant argues in her motion that judgment as a matter of law should be granted in her favor because terminating Plaintiff's employment was necessarily within the course and scope of her employment as Apache County Assessor. Defendant contends that because she acted within the course and scope of her employment, Plaintiff was required to serve Defendant with a Notice of Claim pursuant to A.R.S. § 12-821.01. Plaintiff argues in her response that the question of whether Defendant Capps acted outside the course and scope of her employment when she terminated Plaintiff was properly submitted to the jury and the jury found in her favor. She claims that because the jury found Defendant Capps' conduct was outside the course and scope of employment, no notice of claim was required.

### 1. Notice of Claim Requirement

Under A.R.S. § 12-821.01(A), a person with a claim against a public employee must serve the employee with a notice of claim within 180 days after the cause of action accrues. The claim is barred if the person fails to comply with the notice of claim provision. <u>Id.</u> However, a notice of claim is unnecessary if the Plaintiff has not asserted that the employee defendant was acting within the course and scope of his employment. <u>Crum v. Superior Court</u>, 186 Ariz. 351, 353, 922 P.2d 316, 318 (App. 1996). "Many purely private acts and defalcations of people who happen to be public employees will give rise to lawsuits that everyone would agree merit no claim against the employer, and hence, require no notice pursuant to § 12-821.01." <u>Id.</u> at 352-53, 922 P.2d at 317-18. A plaintiff who fails to file a notice of claim risks a subsequent determination by the trier of fact that the conduct was within the course and scope of employment. <u>Id.</u> at 353, 922 P.2d at 318.

Here, there is no dispute that Plaintiff did not serve a notice of claim on Defendant Capps. Whether she was required to serve such a notice, however, turns on the question of whether Defendant Capps was acting in the course and scope of her employment when she terminated Plaintiff.

### 2. Course and Scope Issue Properly Submitted to Jury

Relying on <u>State v. Shallock</u>, 189 Ariz. 250, 941 P.2d 1275 (1997), Defendant Capps claims that the question of whether she was acting in the course and scope of her

- 5 -

1 employment should not have been submitted to the jury. She contends that because she had
2 the authority to terminate Plaintiff, doing so was necessarily an act within the course and
3 scope of her employment. However, as Judge Broomfield explained when he denied
4 Defendant Capps' motion for summary judgment on this issue, Shallock does not hold that
5 certain actions by a supervisor are, as a matter of law, within the course and scope of
6 employment. To the contrary, the court in Shallock ruled that the Arizona Court of Appeals
7 erred in directing judgment in favor of the state and that the course and scope issue presented
8 a question of fact. Shallock, 189 Ariz. at 261, 941 P.2d at 1286. Although Shallock contains
9 language supporting Defendant's argument that personally motivated conduct may still fall
10 within the course and scope of employment, the court's ultimate holding does not support
11 Defendant's position. Even in the face of the extreme conduct in the Shallock case, the court
12 concluded that the question of course and scope of employment was for the jury to decide.

13 Moreover, Defendant Capps' position that having the authority to fire Plaintiff
14 necessarily means she acted in the course and scope of her employment, is undermined by
15 the Restatement rule relied on in Shallock. As Defendant Capps concedes in her motion, the
16 Shallock court adopted the Restatement of Agency rule in determining whether an act is
17 within the course and scope of employment. Doc. #119 at 5. The Restatement rule provides
18 in relevant part that conduct is within the scope of employment if, but only if:

19     (a) It is of the kind the employee is employed to perform;
20     (b) It occurs substantially within the authorized time and space limits; and
21     (c) It is actuated, at least in part, by a purpose to serve the employer;

22 Restatement (Second) of Agency § 228(1) (1958). Thus, contrary to what Defendant argues,
23 the authority to perform an act is not the end of the inquiry. The course and scope
24 determination requires consideration of other factors, including the purpose behind the
25 conduct. Although there is no dispute about whether Defendant Capps had the authority to
26 fire Plaintiff, the parties strongly dispute the reasons behind the termination. Such disputed
27 factual issues are for the jury to decide.

28

1    The court's decision to submit the issue to the jury is further supported by the Arizona
2 Court of Appeals decision in Crum, supra. Crum involved a claim against a public employee
3 individually for intentional torts but with no allegation that the employee was acting within
4 the course and scope of his employment. Crum, 186 Ariz. at 351-52, 922 P.2d at 316-17.
5 As in this case, it was the defendant in Crum, not the plaintiff, who claimed that the alleged
6 wrongful conduct was within the course and scope of his employment. Id. at 353, 922 P.2d
7 at 318.  The court found that the trier of fact must determine whether the defendant was
8 acting in the course and scope of employment before determining whether a notice of claim
9 was required. Id.; see also Southern Union Co. v. Southwest Gas Corp., 415 F.3d 1001 (9th
10 Cir. 2005) (Relying on Crum, court concluded that an elected member of the Arizona
11 Corporation Commission who was sued individually "was entitled to have the jury consider
12 his defense that his actions were within the scope of his duties as a member of the ACC.").

13    Here, the court's decision to submit the issue of course and scope of employment to
14 the jury is well supported by Arizona law. The court is not persuaded by Defendant Capps'
15 argument that the issue should have been decided as a matter of law by the court. Because
16 the jury necessarily found through its verdict that Defendant Capps was not acting in the
17 course and scope of her employment with Apache County, Plaintiff's failure to submit a
18 notice of claim is of no consequence.

19   **B.   Liability for Interfering with the Employment Contract**

20    Defendant Capps also contends that she is entitled to judgment as a matter of law
21 because she cannot be liable for interfering with Plaintiff's contract with Apache County.
22 She claims that she was acting on behalf of the county when she terminated Plaintiff and,
23 therefore, she cannot interfere with her own contract.  Plaintiff argues in response that
24 because Defendant was acting outside the course and scope of her employment, she was not
25 acting for the county and therefore could be held liable for interfering with the employment
26 contract.

27    "[A] cause of action in tort is available to a party to any contract, at-will or otherwise,
28 when a third party improperly and intentionally interferes with the performance of that

1 contract." Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370, 387, 710 P.2d 1025,
2 1042 (1985). An individual defendant acting outside the course and scope of his employment
3 is a third party who may be held liable for intentionally interfering with a contract between
4 an employee plaintiff and the employer. See Payne v.Pennzoil Corporation, 138 Ariz. 52,
5 57, 672 P.2d 1322, 1327 (App. 1983); Mintz v. Bell Atlantic, 183 Ariz. 550, 555-56, 905
6 P.2d 559, 564-65 (App. 1995).

7 Here, the jury found that Defendant Capps was not acting in the course and scope of
8 her employment when she terminated Plaintiff. Because she was not acting for the county
9 when she terminated Plaintiff, she was a "third party" who could be, and was, held liable for
10 interfering with Plaintiff's employment contract with Apache County. Given the jury's
11 determination, Defendant Capps' argument that she cannot be liable for intentionally
12 interfering with Plaintiff's employment contract is without merit.

13 **C.    Not Bound by Summary Judgment Ruling**

14 Lastly, Defendant Capps argues that the law of the case doctrine does not preclude
15 this court from ruling differently on Defendant's Rule 50 motion than Judge Broomfield ruled
16 on Defendant's summary judgment motion. Defendant points out that when the Rule 50
17 motion was argued during trial, the court stated that Judge Broomfield's legal conclusions in
18 the summary judgment motion on the intentional interference claim are the law of the case
19 and that the court was not at liberty to rule differently. RT at 578.

20 The court agrees that its decision on the pending Rule 50 motion is not constrained
21 by Judge Broomfield's summary judgment ruling. However, as the court also stated during
22 the trial, in conducting its own review of the evidence, the court agreed with Judge
23 Broomfield's conclusion that there was sufficient evidence for a jury to find Defendant acted
24 outside the course and scope of employment. RT at 577. The court further stated that the
25 evidence presented at trial was even stronger than what was before Judge Broomfield when
26 he denied summary judgment. Id. Additionally, as the above legal analysis demonstrates,
27 the court reached its own independent determination of the legal issues in this case. Thus,
28

through its own resolution of the issues, the court concludes that Defendant is not entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED:**

That Defendant's Motion for Judgment as a Matter of Law (Doc. #119) is **DENIED**.

DATED this 6th day of September, 2006.

Edward C. Voss
United States Magistrate Judge